# ORIGINAL

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA : C.A. NO. 1:CV01-1150
ex rel. JAMES E. PRICE,
Registration No. 40310-066 : [Kane, J.]
    Petitioner

        :

        :

    V. :

        :

WARDEN, FCI ALLENWOOD,
    Respondent :

**FILED**
**HARRISBURG**

**AUG 2 0 2001**

MARY E. D'ANDREA, CLERK
Per_____
      DEPUTY CLERK

### RESPONSE TO RESPONDENT'S BRIEF OPPOSING
### MOTION TO STRIKE, CROSS-MOTION FOR
### DEFAULT JUDGMENT

    **JAMES E. PRICE** submits the following **RESPONSE TO RESPONDENT'S**

**BRIEF OPPOSING MOTION TO STRIKE, CROSS-MOTION FOR DEFAULT**

**JUDGMENT.**

### I. THE COURT SHOULD STRIKE THE "RESPONSE" BECAUSE IT IS THE
### FUNCTIONAL EQUIVALENT OF A MOTION TO DISMISS, A PLEADING
### THAT IS NOT RECOGNIZED IN HABEAS CORPUS PRACTICE

    Respondents' pleading, captioned "Response," is the functional equivalent[1] of a

motion to dismiss, which is not an acceptable pleading in habeas corpus practice.

    In **Browder vs. Department of Corrections of Illinois**, 434 U.S. 257, 269, n. 14,

98 S.Ct. 556, 563, n. 14, 54 L.Ed.2d 521 (1978), the Supreme Court stated:

> The custodian's response to a habeas corpus petition
> is not like a motion to dismiss. The procedure for
> responding to the application for a writ of habeas corpus,
> unlike the procedure for seeking a correction of a judgment,

---

[1] Price alleged the Respondent's Response is the "functional equivalent" or a motion to dismiss. At no time did he say, that the government's response is "more akin to a motion to dismiss..."

2

is set forth in the habeas corpus statutes and, under rule
81(a)(2), takes precedence over the Federal Rules.

In **Chavez vs. Morgan**, 932 F.Supp. 1152 (EDWI 1996), the Court stated that the correct response to a habeas petition is an answer to each allegation in the petition, and copies of the documents necessary for the district court to make an informed judgment. See also **Williams vs. United States**, 2000 WL 134717 *1 (NDIll 2000).

In **United States vs. Ukawabutu**, 997 F.Supp. 605 (DNJ 1998), the district court judge stated that the proper response to a habeas corpus petition is an answer and the documents required by statute. The judge reserved the right to request a motion to dismiss if the situation called for it.[2] In this case, however, the district court did not ask the Respondent to file a motion to dismiss.

The Respondent states that **United States ex rel Mitchell vs. Follett**, 358 F2d 922 (2d Cir. 1966) supports the position that it can file a pleading more akin to a motion to dismiss than to an answer. However, the case cited by the Respondent proves Petitioner's point. In that case, a New York state prisoner, filed a petition for habeas corpus under 28 U.S.C. 2241 claiming he had been denied the right to appeal the conviction. The state filed a motion to dismiss. The district court **granted** the petition without a hearing. The court of appeals reversed holding that the district court should have held an evidentiary hearing before granting habeas. The Second Circuit wrote:

> Rather, the critical question for the state is its response
> to the petitioner's claim that a vice underlying the conviction
> regular on its face has caused the custody to be in violation of
> the Constitution or laws or treaties of the United States. 28 U.S.C.

---

[2] Section 2241 states what the government must file, and what it must attach.

2241(c)(3), a response which must be given if the federal judge is to be able to inquire into "the very truth and substance of the causes of his detention." Johnson vs. Zerbst, 304 U.S. 458, 466, 58 S.Ct. 1019, 1024, 82 L.Ed.1461 (1938). The state will, of course, contradict factual allegations made by the petitioner when there is reason to do so. But when it considers the allegations insufficient, it is entitled to attempt to dispose of the challenge to detention as a matter of law. Once the state's response is in hand the judge must make the considered choice among three courses. At the extreme, he may dismiss the petition on the one hand, or grant release of the prisoner on the other, on the ground that the undisputed or incontrovertible facts determine the result as a matter of law. Cf. **Walker vs. Johnston**, 312 U.S. 275, 284, 61 S.Ct. 574, 85 L.Ed. 830 (1941).

As demonstrated above, the best the Respondent can do is point to a case that proves the Respondent's obligation is to (a) respond to the factual and legal allegations in the habeas corpus petition, and then (b) move for what is the functional equivalent of summary judgment.

In this case, the Respondent did not contest the factual allegations or the legal conclusions. It did not attach the indictment, transcript of jury instructions or judgment in a criminal case, or otherwise provide the district court with the information necessary to determine whether the custody was constitutional or unconstitutional, in compliance with a treaty or not in compliance with a treaty.

Instead, the Respondent in a remarkable display of arrogance attached non-precedential pleadings and decisions in cases that (a) have no relationship to the instant 2241 habeas corpus petition, and (b) were issued before the publication of a number of recent decisions that have a bearing on this case.

First, in **INS vs. St. Cyr**, 121 S.Ct. 2271, 2279 (2001), the United States Supreme Court stated, "at the absolute minimum, the Suspension Clause protects the writ as it existed in 1789." Loosely translated, this general statement means that no matter what the

4

Congress says or does, the district court has subject matter jurisdiction to entertain an allegation that the custody violates a violation of a treaty, or that the custody was imposed by a court lacking jurisdiction. St Cyr also points out that res judicata is a concept that does not exist in habeas corpus.

Accordingly, even if the prior 2241 filed by Price had some relationship to the outcome of this case--and it did not--Price would have had the right to file a second 2241 based on **Apprendi** because he would have had the same right in 1789.

Second, in **United States vs. Buckland**, ___F3d___, 2001 WL 893440 (9th Cir. 2001), the Court held 21 U.S.C. 841(b)(1)(A) and 841(b)(1)(B) unconstitutional because the language of the statutes conflicted with the requirements of **Apprendi.**

The Court should look behind the label on the Respondent's pleading, treat it as a motion to dismiss, strike the pleading, and grant a default judgment against Respondent and in favor of the Petitioner.

## II. THE RESPONDENT'S POSITION IS INCONSISTENT WITH BELL VS. HOOD.

In **Bell vs. Hood**, 327 U.S. 678, 680, 66 S.Ct. 773, 775, 90 L.Ed. 939 (1946), the United States Supreme Court stated, "Jurisdiction, therefore, is not defeated as respondents seem to contend, by the possibility that the averments might fail to state a cause of action..." The Respondents, in order to prevail on a theory that the court lacks jurisdiction, must establish that **"the cause of action is so patently without merit as to justify...dismissal for want of jurisdiction. Id. at 327 U.S. 682, 66 S.Ct. 776.**

Turning to this case, jurisdiction of this court is based upon 28 U.S.C. Section 2241, which reads, in pertinent part, as follows:

### 2241. Power to grant writ

(a) Writs of habeas corpus may be granted by the...district courts...

(c) The writ of habeas corpus shall not extend to a prisoner unless...(3) He is in custody in violation of the Constitution or laws or treaties of the United States...

In **Bowen vs. Johnston**, 306 U.S. 19, 26, 59 S.Ct. 442, 446, 83 L.Ed. 455 (1939), the Supreme Court said, "It must never be forgotten that the writ of habeas corpus is the precious safeguard of personal liberty and that there is no higher duty than to maintain it unimpaired."

In **Garza vs. Lapin**, 253 F3d 918 (7th Cir. 2001), the issue was whether a 2241 habeas could be used to litigate an allegation that the custody violated the Charter of the Organization of American States would fall within the "savings clause."[3] The Court held that the allegation fell within the savings clause, and the court had jurisdiction.

---

[3] 28 U.S.C. 2255 reads, in pertinent part, as follows:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court, which imposed the sentence to vacate, set aside, or correct the sentence.

> Unless the motion, and the files, and the records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues, and make findings of fact and conclusions of law with respect thereto. If the court finds that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render

Here, the 2241 habeas corpus petition alleged that the remedy afforded by 2255 motion was (and remains) "inadequate or ineffective" to test the legality of the detention. The 2241 habeas listed a series of reasons why the 2255 motion was inadequate or ineffective. First, the 2241 petition alleged the custody was in violation of a treaty of the United States, an issue that it not cognizable in a 2255 motion but is cognizable in a 2241 habeas corpus petition. Second, the 2241 habeas alleged that intervening changes in the reach of criminal statutes occurred after expiration of the deadline for filing the 2255 motion. Third, the 2241 habeas alleged lack of jurisdiction to impose a sentence as long as the sentence imposed.

## III. THE "RESPONSE" DOES NOT DISCUSS THE BUCKLAND CASE WHEREIN THE NINTH CIRCUIT HELD THE PROVISIONS OF 21 U.S.C. 841(b)(1)(A) AND (b)(1)(B) UNCONSTITUTIONAL

In **United States vs. Buckland**, ___F3d___, 2001 WL 893440 (9th Cir. 2001), the Ninth Circuit held that 21 U.S.C. 841(b)(1)(A) and (b)(1)(B) are facially

---

the judgment vulnerable to collateral attack, the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate...

An application for a writ of habeas corpus...shall not be entertained if it appears that the applicant has failed to apply for relief, by motion, to the court which sentenced him, **unless it also appears that the remedy by motion is inadequate or ineffective to test the legality of his detention. [highlighted portion called the "savings clause"]**

unconstitutional. [Attached]. The Respondent does not discuss the case even though it

tends to show that the **Apprendi** decision is automatically retroactive as the first

interpretation of a criminal statute.

## IV. JONES/APPRENDI/JONES, TAKEN COLLECTIVELY, IS THE FIRST INTERPRETATION OF THE ELEMENTS OF 21 U.S.C. 841

**Tyler vs. Cain**, 2001 WL 720703 (2001) held that the phrase "a new rule of

constitutional law made retroactive to cases on collateral review" means the Supreme

Court has declared the rule to be retroactive.

**Tyler vs. Cain** has absolutely nothing to do with the analysis of the

**Jones/Apprendi/Jones**. **Tyler vs. Cain** applies only to the retroactivity of new rules of

criminal procedure.

The case bears a close resemblance to lines of cases interpreting the coverage of

various criminal statutes.

For example, in **United States vs. Callanan**, 881 F2d 229, 231 fn 1 (6th Cir.

1989), the Sixth Circuit held **McNally vs. United States**, 483 U.S. 350, 107 S.Ct. 2875,

97 L.Ed.2d 292 (1987) retroactive as the first interpretation of the mail fraud statute.

The court wrote:

> The case at bar involves not a new rule of criminal procedure
> but a new interpretation of substantive criminal law. In this,
> the present case resembles **Davis vs. United States**, 417 U.S. 333, 341-42,
> 94 S.Ct. 2298, 2302-03, 41 L.Ed.2d 109 (1974), a decision indicating
> that where the intervening change of law is such that the defendant was
> punished "for an act that the law does not make criminal" the new rule of
> law must be applied retroactively in post conviction proceedings.

In a footnote, the court wrote, "**Teague vs. Lane**, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989) addresses only the retroactivity of 'new constitutional rules of criminal procedure' and thus does not control our decision here."

Again, in **Lanier vs. United States**, 220 F3d 833, 837 (7th Cir. 2000), the Seventh Circuit held that **Richardson vs. United States**, 526 U.S. 813, 119 S.Ct. 1707, 143 L.Ed.2d 985 (1999), [Supreme Court held that the district court judge must give an instruction advising that 21 U.S.C. 848 requires the jury be unanimous with respect the three predicate felony violations forming the series of felony violations] is retroactive to cases on collateral attack as the first interpretation of a criminal law.

Finally, in **Reyes-Requena vs. United States**, 243 F3d 893, 905 (5th Cir. 2001) the Court stated that **Jones vs. United States**, 529 U.S. 848, 120 S.Ct. 1904, 146 L.Ed.2d 902 (2000)[the Jones arson case] is retroactive as a first interpretation of substantive law, citing **United States vs. Ryan**, 227 F3d 1058, 1062-63 (8th Cir. 2000)[also an arson case].

Similarly, **Jones/Apprendi/Jones,**[4] taken collectively, is the first interpretation of the drug statutes.

---

[4]     **Jones vs. United States**, 526 U.S. 227, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999) held that that all elements of a criminal offense must be stated in the indictment, submitted to a jury and proven beyond a reasonable doubt. **Apprendi vs. New Jersey**, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000) held "Other than a fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." **Apprendi** at 120 S.Ct. 2362-63. **United States vs. Jones**, 235 F3d 1231 (10th Cir. 2000), which was reconsidered after the United States Supreme Court granted certiorari, vacated the sentence, and remanded in light of **Apprendi** held that the principles of **Apprendi** apply to cases prosecuted under 21 U.S.C. 841(a) and 841(b).

**Jones/Apprendi/Jones** collectively are retroactive as a first interpretation of 21 U.S.C. 841(b)(1)(A) just as **Richardson** was retroactive as a first interpretation of the elements of 21 U.S.C. 848, or **Bailey** was retroactive as the first interpretation of 18 U.S.C. 924(c), or **McNally** was retroactive as the first interpretation of 18 U.S.C. 1341.

At the risk of flogging the point, retroactivity analysis in **Teague** used in **Tyler vs. Cain** applies to new rules of criminal procedure only, not to the first interpretation of a criminal statute.

This case involves a change in substantive criminal law, not a new rule of criminal procedure. The application of **Apprendi** (through the Jones GVR) involves the first interpretation of what constitutes the element of 21 U.S.C. 841(b)(1)(A).

As such, the **Apprendi** (through the Jones GVR) deals with the reach of a criminal statute. Historically, such decisions are automatically retroactive to collateral review. **Rivers vs. Roadway Express**, 511 U.S. 298, 114 S.Ct. 1510, 1519, 128 L.Ed.2d 274 (1994). ["a judicial construction of a statute is an authoritative statement of what the statute meant before as well as after the decision of the case giving rise to that construction."], **Davis vs. United States**, 417 U.S. 333, 341-42, 94 S.Ct. 2298, 2302-03, 41 L.Ed.2d 109 (1974)[Held that in a section 2255 motion the court must hear the merits of a prisoner's claim based upon a circuit's decision interpreting the substantive reach of a criminal statute even though the case was decided after the conviction became final]. **United States vs. McKie**, 73 F3d 1149 (DC Cir. 1996)[collecting cases]. **Fiore vs. White**, 121 S.Ct. 712, 148 L.Ed.2d 629 (2001).[5]

---

[5] **Apprendi vs. New Jersey**, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000) in conjunction with **Carliss Jones** represents a first interpretation of what constitutes an element of 21 U.S.C. 841(b). Accordingly, like **Lanier**, which interpreted the elements of

**Jones/Apprendi/Jones** have had significant ramifications for drug prosecutions under 21 U.S.C. 841(a) and sentencing under 841(b), which describes different offenses dependent upon drug quantity.

In **United States vs. Flowal**, 234 F3d 932, 938 (6th Cir. 2000), the Sixth Circuit said that each penalty provision of 841(b) is to be treated as a separate crime, with different elements, including drug identity and drug weight, which must be proved beyond a reasonable doubt when sentencing a defendant in excess of the default statutory maximum set forth in 21 U.S.C. 841(b)(1)(C) for all drugs except marijuana, or in 841(b)(1)(D) for marijuana.

Most courts appear to endorse this approach. **United States vs. Doggett**, 230 F3d 160 (5th Cir. 2000), **United States vs. Angle**, 230 F3d 113 (4th Cir. 2000).

On the facts of this case, **Jones/Apprendi/Jones** line is retroactive as the first interpretation of 21 U.S.C. 841, an interpretation that makes Price actually innocent of a violation of 841(b)(1)(A).

See also, **Fiore vs. White**, 531 U.S. 225, 121 S.Ct. 712, 148 L.Ed.2d 629 (2001) holding that the first interpretation of a criminal statute is retroactive to the date of enactment. In that case, the petitioner was convicted in a state court of operating a hazardous waste facility without a permit. After Fiore's conviction became final, the PA Supreme Court interpreted the statute for the first time and made it clear that Fiore had a permit so his conduct was not within the scope of the statute. The PA courts refused to grant collateral relief. The Court held it was error not to grant the relief sought because

---

CCE, Apprendi also is retroactive to the date of enactment as the first interpretation of substantive law.

11

the PA Supreme Court's interpretation of the statute was retroactive to the date of enactment.

Assuming **Jones/Apprendi/Jones** is the first interpretation of the federal drug laws, then 28 U.S.C. 2241 is the appropriate procedural vehicle because Price has no other vehicle available. He cannot file for leave to file a second 2255 motion because he never filed a first 2255 motion. Even if he could file for leave, he could not prevail because **Jones/Apprendi/Jones** is not a new constitutional rule.

With respect to the merits, there is no question that Price's sentence for cocaine places him within even the narrowest view of the **Jones/Apprendi/Jones** under which the maximum sentence for the cocaine offense is 20 years.

**V. CONCLUSION**

The writ of habeas corpus should be **GRANTED**.

Cheryl J. Sturm
Attorney-At-Law
408 Ring Road
Chadds Ford, PA 19317
484/ 771-2000

12

## CERTIFICATE OF SERVICE

The undersigned certifies that on the 16th day of August, 2001, s/he served a copy of the

**Response to the Respondent's Brief Opposing Petitioner's Motion to Strike, and**

**Motion for Default Judgment** upon opposing counsel, and all interested parties by

mailing a copy of same, first class mail, first class postage prepaid, addressed as follows:

Kate L. Mershimer, Esquire
Assistant United States Attorney
Middle District of Pennsylvania
228 Walnut Street, Second Floor
P.O. Box 11754
Harrisburg, PA 17109-1754

--- F.3d ----
2001 WL 893440 (9th Cir.(Wash.))
(Publication page references are not available for this document.)

UNITED STATES OF AMERICA, Plaintiff-
Appellee,
v.
CALVIN WAYNE BUCKLAND, Defendant-
Appellant.

No. 99-30285

United States Court of Appeals, Ninth Circuit.

D.C. No. CR 94-5073 JET

Argued and Submitted August 8, 2000-Seattle,
Washington Submission vacated
August 9, 2000 Resubmitted December 4, 2000
Filed August 9, 2001

Appeal from the United States District Court for the
Western District of Washington Jack E. Tanner,
District Judge, Presiding

Zenon Olbertz, Tacoma, Washington, for the
defendant-appellant.

Arlen Storm, Assistant United States Attorney,
Seattle, Washington, for the plaintiff-appellee.

Before: Betty B. Fletcher and A. Wallace
Tashima, Circuit Judges, and Adrian G. Duplantier,
District Judge. [FN*r]

TASHIMA, Circuit Judge:

Calvin Wayne Buckland appeals the sentence
imposed by the district court following his
conviction for conspiracy to distribute
methamphetamine and possession with intent to
distribute methamphetamine, in violation of 21
U.S.C. §§ 841 and 846. After briefing was
completed in this appeal, the Supreme Court held
that any fact, other than a prior conviction, that
increases the prescribed statutory maximum penalty
to which a defendant is exposed must be submitted
to a jury and proven beyond a reasonable doubt.
Apprendi v. New Jersey, 530 U.S. 466, 490 (2000).
We subsequently vacated submission and ordered
supplemental briefs on the impact of Apprendi on
this appeal. Buckland then argued that Apprendi
rendered 21 U.S.C. § 841(b) facially
unconstitutional. We have jurisdiction pursuant to
18 U.S.C. § 3742(a) and 28 U.S.C. § 1291, and we

hold that 21 U.S.C. §§ 841(b)(1)(A) & (B) are
facially unconstitutional under Apprendi. [FN1] We
therefore vacate Buckland's sentence and remand for
resentencing under 21 U.S.C. § 841(b)(1)(C).

BACKGROUND

In 1994, Buckland was indicted on one count of
conspiracy to distribute methamphetamine, in
violation of 21 U.S.C. §§ 841(b)(1)(A) & 846, three
counts of possession of methamphetamine with
intent to distribute, in violation of 21 U.S.C. §§ 841
(a)(1) & (b)(1)(B), and three counts of use of a
firearm during a drug trafficking crime, in violation
of 18 U.S.C. § 924(c). Count One of the indictment
alleged that the conspiracy involved "one thousand
(1000) grams or more of a mixture or substance
containing a detectable amount of
methamphetamine," but, as was customary, the jury
was not instructed that it needed to find that any
particular amount of methamphetamine was involved
in order to convict on the conspiracy or the
possession counts. Buckland was convicted on all
seven counts. The district court determined the
amount of drugs under the preponderance of the
evidence standard and sentenced Buckland to 824
months' imprisonment. On appeal, we affirmed his
conspiracy and drug convictions, vacated the firearm
convictions under Bailey v. United States, 516 U.S.
137 (1995), and remanded for resentencing. United
States v. Buckland, No. 95-30147, 1996 WL 632958
(9th Cir. Oct. 28, 1996) (unpublished decision).

On remand, Buckland attempted to raise a number
of issues, including whether the district court relied
on an inaccurate estimate of the amount of drugs in
establishing his base offense level. The district
court, however, limited the hearing to a firearm
enhancement issue and sentenced Buckland to 360
months' imprisonment. Buckland again appealed,
and we held that the remand in the first appeal was a
general remand that permitted the district court to
consider all of Buckland's sentencing objections.
We therefore vacated his sentence and remanded for
resentencing. United States v. Buckland, Nos.
97-30204, 97- 35687, 1998 WL 514852 (9th Cir.
Aug. 14, 1998) (unpublished decision). On the
second remand, the district court sentenced
Buckland to a term of 324 months.

On this appeal, Buckland contends that the district

Copr. © West 2001 No Claim to Orig. U.S. Govt. Works

--- F.3d ----
(Publication page references are not available for this document.)

court's findings on the type and quantity of methamphetamine were erroneous, that the court erred in failing to decrease his sentence for acceptance of responsibility, and that his trial counsel rendered ineffective assistance. In his supplemental briefs, as indicated, Buckland contends that his sentence was imposed in violation of Apprendi, and that 21 U.S.C. § 841(b) is facially unconstitutional under Apprendi. [FN2] We agree.

## STANDARD OF REVIEW

Because Apprendi was decided after Buckland's resentencing, Buckland did not object to the district court's use of the preponderance of the evidence standard in determining the amount of methamphetamine. Our review therefore is for plain error. Fed.R.Crim.P. 52(b). Under the plain error standard, Buckland must establish that there was error, that the error was plain, and that it affected his substantial rights. United States v. Olano, 507 U.S. 725, 732 (1993). If these conditions are met, we may exercise our discretion to correct the error only if the error " 'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.' " Id. (quoting United States v. Young, 470 U.S. 1, 15 (1985)) (alteration in the original).

## ANALYSIS
### I.

The issue in Apprendi was whether the Due Process Clause of the Fourteenth Amendment requires that a fact authorizing an increase in the maximum prison sentence for an offense must be found by a jury beyond a reasonable doubt. Apprendi, 530 U.S. at 469. In a decision foreshadowing Apprendi, the Supreme Court had acknowledged the possible constitutional problems of a statute that would allow an increased penalty based on a fact found by a judge by a preponderance of the evidence. Jones v. United States, 526 U.S. 227, 242-52 (1999). The Court had avoided the constitutional question, however, by construing the statute at issue, 18 U.S.C. § 2119, the federal carjacking statute, as establishing separate offenses with separate penalties, rather than one offense with sentencing enhancements based on a judicial finding by a preponderance of the evidence. Id. at 235, 252. In Apprendi, however, the constitutional question was "starkly presented." Apprendi, 530 U.S. at 476.

Charles Apprendi was convicted of possession of a firearm for an unlawful purpose, a second-degree offense under New Jersey state law that carried a penalty range of five to 10 years. [FN3] At his sentencing, the judge sentenced him to 12 years, applying a New Jersey hate crime statute that provided for an "extended term of imprisonment" if the court found, by a preponderance of the evidence, that "[t]he defendant in committing the crime acted with a purpose to intimidate an individual or group of individuals because of race, color, gender, handicap, religion, sexual orientation or ethnicity." N.J. Stat. Ann. § 2C:44-3(e) (West 2001). The state appeals court and the New Jersey Supreme Court affirmed Apprendi's sentence, finding that the hate crime enhancement was a traditional sentencing factor, and, as such, was not an element of the offense that needed to be found by a jury beyond a reasonable doubt. Apprendi, 530 U.S. at 471-73.

The United States Supreme Court reversed, holding that the increase in the statutory maximum penalty violated Apprendi's constitutional rights to due process and a jury trial because it " 'remove[d] from the jury the assessment of facts that increase the prescribed range of penalties to which a criminal defendant is exposed.' " Id. at 490 (quoting Jones, 526 U.S. at 252 (Stevens, J., concurring)). The Court noted the long history of judges exercising discretion by taking various factors into consideration when imposing a sentence within statutory limits. Id. at 481. The New Jersey statute, however, unconstitutionally permitted the judge to impose a sentence above the statutory maximum, based on a factual finding made by the judge under the preponderance of the evidence standard. Id. at 491. The Court thus "confirm[ed] the opinion ... expressed in Jones," that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." [FN4] Id. at 490.

We applied Apprendi in United States v. Nordby, 225 F.3d 1053 (9th Cir.2000), and held that "the amount of drugs for which a defendant is sentenced under 21 U.S.C. § 841(b)(1) is such a fact." Id. at 1056. Nordby's sentence therefore violated Apprendi because the drug quantity finding was made by the judge under the less demanding

Copr. © West 2001 No Claim to Orig. U.S. Govt. Works

--- F.3d ----
**(Publication page references are not available for this document.)**

standard, and it increased the penalty beyond the statutory maximum allowable under the facts as found by the jury. Id. at 1061-62. We concluded in Nordby that we could give no "construction to the statute before us that would avoid the constitutional issue raised by Apprendi," because Congress "clearly intended that drug quantity be a sentencing factor, not an element of the crime under § 841; the statute is not susceptible to a contrary interpretation." Id. at 1058.

## II.

21 U.S.C. § 841 is part of a "significant history" of determinate- sentencing schemes permitting discretionary sentencing by judges, within limits set by legislatures, based upon sentencing factors deemed relevant by the legislature. Apprendi, 530 U.S. at 544 (O'Connor, J., dissenting). Similar to other such schemes, see, e.g., 21 U.S.C. § 960, § 841 describes "unlawful acts," traditionally viewed as the elements of the offense, in subsection (a), and "penalties," traditionally viewed as sentencing factors, in subsection (b). The penalties are based on the type and quantity of drugs, although subsection (b)(1)(C) imposes a 20-year maximum sentence for an undetermined amount of schedule I or II drugs. [FN5]

Justice O'Connor's dissent in Apprendi recognized that the majority's "reasoning strongly suggests" that federal determinate-sentencing schemes, such as that found in § 841, are not constitutional. Apprendi, 530 U.S. at 550-51 (O'Connor, J., dissenting); see also id. at 544 (stating that, "in light of the adoption of determinate-sentencing schemes by many States and the Federal Government, the consequences of the [majority's] rules in terms of sentencing schemes invalidated by today's decision will likely be severe"). Justice Breyer also expressed concern that "the majority's rule creates serious uncertainty about the constitutionality of such statutes and about the constitutionality of the confinement of those punished under them." Id. at 565 (Breyer, J., dissenting). After examining § 841(b) with the usual tools of statutory construction, such as the statute's structure and legislative history, as well as under the rule announced in Apprendi, we agree with Justices O'Connor and Breyer that the majority rule in Apprendi renders the determinate-sentencing scheme in § 841(b) unconstitutional. [FN6]

We note first that, as the government acknowledges, the sentence imposed by the district court constitutes error because it is longer than 20 years, the statutory maximum penalty under § 841 (b)(1)(C) for a conviction with no jury determination of the quantity of drugs. We also note that, as was customary prior to Apprendi, the jury instructions given by the district court did not require the jury to find the amount of methamphetamine. [FN7] Similarly, the jury verdict form merely stated, "guilty as charged" on each count and did not contain any finding of the amount of methamphetamine. For these reasons, Buckland's sentence violates Apprendi.

## III.

Apprendi teaches us that " '[i]t is unconstitutional for a legislature to remove from the jury the assessment of facts that increase the prescribed range of penalties to which a criminal defendant is exposed.' " 530 U.S. at 490 (quoting Jones v. United States, 526 U.S. 227, 252 (1999) (Stevens, J., concurring)). Nordby held that § 841 was not susceptible to an interpretation other than that Congress intended drug quantity to be a sentencing factor, not an element of the offense under § 841. 225 F.3d at 1058. Applying Apprendi to the statute as interpreted by Nordby, we cannot avoid the conclusion that Apprendi renders §§ 841(b)(1)(A) and (B) unconstitutional because they permit the judge to find a fact, the quantity of drugs, under the preponderance of the evidence standard, that increases the maximum penalty to which a defendant is exposed.

We begin by examining the structure of § 841. [FN8] Subsection 841(a), entitled "Unlawful acts," sets forth the elements of the offense, providing that "it shall be unlawful for any person knowingly or intentionally-(1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance; or (2) to create, distribute, or dispense, or possess with intent to distribute or dispense, a counterfeit substance." Subsection 841(b) is entitled "Penalties," and it provides that "any person who violates subsection (a) of this section shall be sentenced as follows." It then provides for penalties based upon factors traditionally determined by the sentencing judge by a preponderance of the

Copr. © West 2001 No Claim to Orig. U.S. Govt. Works

--- F.3d ----
(Publication page references are not available for this document.)

Page 14

evidence-the amounts and types of drugs, along with increased penalties if death or serious bodily injury results, or if the defendant has a prior conviction for a felony drug offense. Under this structure, only subsection (a) can be violated. Subsection (b) only provides the penalties for a violation of subsection (a).

The penalties in §§ 841(b)(1)(A) and (b)(1)(B) depend on the quantity of each drug involved; however, as stated above, § 841(b)(1)(C) provides a 20- year maximum sentence for an indeterminate amount of schedule I or II drugs (provided that the death or serious bodily injury enhancement and the prior conviction do not apply). Subsection 841(b)(1)(D) provides a five-year maximum for, inter alia, schedule III controlled substances. [FN9] On its face, therefore, § 841 differentiates between the elements of the offense and the prescribed penalties.

We recognize that the statute at issue in Apprendi explicitly permitted the imposition of the hate crime enhancement based upon a finding by the court by a preponderance of the evidence, whereas § 841 does not explicitly state that the court may find the drug quantity by a preponderance of the evidence. See N.J. Stat. Ann. § 2C:44-3(e). This is an insufficient basis, however, on which to distinguish § 841. The fact that the New Jersey Legislature made its intent explicit, and that Congress did not, does not give us "the prerogative to ignore the legislative will in order to avoid constitutional adjudication." Commodity Futures Trading Comm'n v. Schor, 478 U.S. 833, 841 (1986) ("CFTC "). Nordby has already held that Congress clearly intended to allow a judge to determine drug quantity under § 841 under a preponderance of the evidence standard. [FN10] 225 F.3d at 1058. Moreover, the language of the statute, providing that "any person who violates subsection (a) of this section shall be sentenced as follows," indicates Congress' intent that the penalties be determined by the judge at sentencing. The structure and legislative history of § 841 further indicate Congress'' intent that the quantity of drugs be a sentencing factor, not an element of the offense.

The statute is now and always has been structured by defining the offense in subsection (a) and the penalties in subsection (b). See, e.g., Comprehensive Drug Abuse Prevention and Control

Act of 1970, Pub.L. No. 91-513, § 401, 84 Stat. 1260 (codified, as amended, at 21 U.S.C. § 841). The legislative history of the statute clearly differentiates between violations and criminal penalties. See, e.g., H.R.Rep. No. 91-1444 (1970), reprinted in 1970 U.S.C.C.A.N. 4566, 4570, 4575. Particularly telling is that, in describing the penalties section, the legislative history notes that, "[t]he foregoing sentencing procedures give maximum flexibility to judges, permitting them to tailor the period of imprisonment, as well as the fine, to the circumstances involved in the individual case." Id. at 4576 (emphasis added).

In 1970, the penalties depended on the type of drugs, rather than the amount of drugs. Pub.L. No. 91-513, § 401; see also H.R.Rep. No. 91-1444 (1970), reprinted in 1970 U.S.C.C.A.N. 4566, 4576 (stating that the penalties vary, "depending upon the danger of the drugs involved"). In 1983, however, Congress recognized that, "[w]hile it is appropriate that the relative dangerousness of a particular drug should have a bearing on the penalty for its importation or distribution, another important factor is the amount of the drug involved." S.Rep. No. 98-225, at 255 (1984), reprinted in 1984 U.S.C.C.A.N. 3182, 3437. Congress therefore amended § 841 to provide greater penalties for offenses involving larger amounts of drugs. Id. at 258, reprinted in 1984 U.S.C.C.A.N. 3182, 3440. The drug quantity determination, therefore, was placed in the penalties section, which Congress had already described as containing sentencing procedures for the judge. [FN11] Cf. H.R.Rep. No. 101- 681(I), at 110 (1990), reprinted in 1990 U.S.C.C.A.N. 6472, 6514-15 (noting the need for judges to have "flexibility when fashioning a sentence" under § 841(b)).

The structure of the statute itself and the legislative history clearly evince congressional intent that drug quantity be a sentencing factor, not an element of the offense. In Apprendi, however, the Court described the distinction between elements and sentencing factors as "constitutionally novel and elusive." 530 U.S. at 494. We therefore examine § 841(b) in light of what the Court described as "the relevant inquiry," that is, the effect, rather than the form, of the factor-"does the required finding expose the defendant to a greater punishment than that authorized by the jury's guilty verdict?" Id. The answer is yes. Subsections 841(b)(1)(A) and (B)

Copr. © West 2001 No Claim to Orig. U.S. Govt. Works

--- F.3d ----

**Page 15**

(Publication page references are not available for this document.)

permit the judge to find a fact, the quantity of drugs, that increases the maximum sentence beyond the 20-year maximum in § 841(b)(1)(C) that may be imposed for an unspecified amount of drugs. They therefore "remove[ ] the jury from the determination of a fact that, if found, exposes the criminal defendant to a penalty exceeding the maximum he would receive if punished according to the facts reflected in the jury verdict alone." Id. at 482-83. The district court's finding that Buckland was responsible for eight kilograms of methamphetamine increased his potential maximum sentence from 20 years, based on the jury finding of an unspecified amount of methamphetamine, to life imprisonment. This differential is "unquestionably of constitutional significance." Id. at 495 (describing the differential between a potential maximum sentence of 10 years and 20 years). Under the "relevant inquiry" set forth in Apprendi, therefore, we are unable to avoid the conclusion that § 841(b) is unconstitutional.

We further note that the Court distinguished Almendarez-Torres on the basis that recidivism, the sentencing factor at issue in Almendarez-Torres, did not relate to the commission of the offense itself, whereas the "biased purpose inquiry goes precisely to what happened in the 'commission of the offense.' " Id. at 496 (quoting Almendarez-Torres, 523 U.S. at 244). Similarly here, the amount of drugs cannot be said to be unrelated to the commission of the offense. Rather, a large amount of drugs makes the offense more dangerous; this is precisely why Congress amended the statute to allow increased penalties depending on the amount of drugs involved. S.Rep. No. 98-225, at 255 (1984), reprinted in 1984 U.S.C.C.A.N. 3182, 3437. The amount of drugs therefore "goes precisely to what happened in the commission of the offense." 530 U.S. at 496 (internal quotations omitted).

We recognize the maxim that "constitutionally doubtful constructions should be avoided where 'fairly possible.' " Miller v. French, 530 U.S. 327, 336 (2000) (quoting Communications Workers v. Beck, 487 U.S. 735, 762 (1988)). "It is equally true, however, that this canon of construction does not give a court the prerogative to ignore the legislative will in order to avoid constitutional adjudication; '[a]lthough this Court will often strain to construe legislation so as to save it against constitutional attack, it must not and will not carry this to the point of perverting the purpose of a statute ...' or judicially rewriting it." CFTC, 478 U.S. at 841 (quoting Aptheker v. Secretary of State, 378 U.S. 500, 515 (1964)); see also Miller, 530 U.S. at 336 (noting the principle that, "where Congress has made its intent clear, 'we must give effect to that intent' " (quoting Sinclair Refining Co. v. Atkinson, 370 U.S. 195, 215 (1962)). We cannot, therefore, follow the lead of the Seventh Circuit, which has overruled its precedent holding that drug quantities under § 841(b) are "always a sentencing factor." United States v. Nance, 236 F.3d 820, 825 (7th Cir.2000), petition for cert. filed (U.S: Apr. 24, 2001) (No. 00-9633); see also United States v. Westmoreland, 240 F.3d 618, 632 (7th Cir.2001) (discussing Nance ). For the same reason, we cannot agree with the Seventh Circuit's holding in United States v. Brough, 243 F.3d 1078 (7th Cir.2001), that Apprendi does not render § 841 unconstitutional. [FN12]

In Brough, the court reasoned that the statute does not explicitly state that the type and quantity of drugs are to be determined by the judge by a preponderance of the evidence. Id. at 1079. The court further reasoned that

[i]nstead the law attaches effects to facts, leaving it to the judiciary to sort out who determines the facts, under what burden. It makes no constitutional difference whether a single subsection covers both elements and penalties, whether these are divided across multiple subsections (as § 841 does), or even whether they are scattered across multiple statutes (see 18 U.S.C. §§ 924(a), 1963). Apprendi holds that the due process clauses of the fifth and fourteenth amendments make the jury the right decisionmaker (unless the defendant elects a bench trial), and the reasonable-doubt standard the proper burden, when a fact raises the maximum lawful punishment. How statutes are drafted, or implemented, to fulfil that requirement is a subject to which the Constitution does not speak. Id.

We disagree with the Seventh Circuit for several reasons. First, although we should construe a statute to avoid "serious constitutional problems," we cannot do so if "such construction is plainly contrary to the intent of Congress." Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. & Constr. Trades Council, 485 U.S. 568, 575 (1988). For the reasons already discussed, construing § 841(b) as

Copr. © West 2001 No Claim to Orig. U.S. Govt. Works

(Publication page references are not available for this document.)

containing elements of the offense rather than sentencing factors is "plainly contrary to the intent of Congress." Cf. United States v. Kelly, 105 F.Supp.2d 1107, 1115 (S.D.Cal.2000) (reasoning that "congressional idleness in the face of voluminous precedent" that § 841(b) contains sentencing factors, not elements, indicates Congress' agreement). Furthermore, we are bound by Nordby, which has already held that § 841(b) is not susceptible to the interpretation that it contains elements of the offense. See 225 F.3d at 1058.

Second, the analysis in Brough does not acknowledge the role of congressional intent in evaluating the constitutionality of a statute. Whether Congress intended drug quantity to be a sentencing factor rather than an element of the offense is integral to the question. Cf., e.g., Jones, 526 U.S. at 232 (in construing 18 U.S.C. § 2119, the Court reasoned that "[m]uch turns on the determination that a fact is an element of an offense rather than a sentencing consideration, given that elements must be charged in the indictment, submitted to a jury, and proven by the Government beyond a reasonable doubt"). Indeed, in two cases decided shortly before Apprendi, the Supreme Court's statutory analysis focused on determining legislative intent. See, e.g., Castillo v. United States, 530 U.S. 120, 123 (2000) (identifying the question presented as "whether Congress intended the statutory references to particular firearm types in [18 U.S.C.] § 924(c)(1) to define a separate crime or simply to authorize an enhanced penalty"); Jones, 526 U.S. at 232-40 (examining statute's structure and history, as well as similar statutes passed by Congress, in order to determine congressional intent on whether factor was element of offense or sentencing consideration); see also Almendarez-Torres, 523 U.S. at 228 (stating that the question of which factors are elements of an offense and which are sentencing factors is "normally a matter for Congress," and, accordingly, looking to the statute and to congressional intent to analyze the statute). Apprendi seems to eschew the distinction between sentencing factors and elements in favor of its "relevant inquiry" of the effect of the factor; the Court, however, did not go as far as to abolish the distinction. See Apprendi, 530 U.S. at 494. Moreover, even if the sentencing factor versus element distinction is not dispositive, § 841 violates the constitutional requirement set forth in Apprendi that a fact, other than a prior conviction, that

increases the penalty for a crime beyond the statutory maximum must be submitted to the jury and proven beyond a reasonable doubt. Id. at 490.

Nor do we think there is a middle road, by which drug quantity is sometimes an element of the offense that must be proven to the jury beyond a reasonable doubt, and sometimes a sentencing factor that the judge can decide by a preponderance of the evidence. Cf. Horton v. United States, 244 F.3d 546, 552 (7th Cir.2001) (concluding that, although drug type is not an element of the offense, it "is sometimes a factor that must be determined by a jury-when such a determination will increase the maximum penalty authorized by statute," citing Apprendi ). Regardless of whether the Supreme Court intended to abolish the distinction between offense elements and sentencing factors, the fact remains that quantity must either be submitted to the jury and proven beyond a reasonable doubt, or it is a factor that can be decided by the sentencing judge. This approach, of requiring it to be proven to the jury only if the resulting sentence will be beyond the statutory maximum, but allowing it to be decided by the judge if it is not, is unworkable. As a practical matter, the prosecutor will always have to submit drug quantity to the jury. This raises the problem articulated by Justice Breyer in Apprendi, where he stated that, "to require jury consideration of all such [sentencing] factors- say, during trial where the issue is guilt or innocence-could easily place the defendant in the awkward (and conceivably unfair) position of having to deny he committed the crime yet offer proof about how he committed it, e.g., 'I did not sell drugs, but I sold no more than 500 grams.' " Apprendi, 530 U.S. at 557 (Breyer, J., dissenting); cf. Jackson, 207 F.3d at 921 (raising a similar problem, "[i]f a jury were required to determine whether the defendant had distributed 3, 6, 49, or 52 grams of mixture or substance containing crack, its attention would be deflected from the question at once more fundamental to culpability and more manageable by a lay factfinder whether the defendant had distributed a forbidden substance").

IV.

As noted above, Buckland's claim is reviewed for plain error because he did not object to the district court's determination of the drug quantity under the preponderance of the evidence standard.

Copr. © West 2001 No Claim to Orig. U.S. Govt. Works

Fed.R.Crim.P. 52(b); Nordby, 225 F.3d at 1060. Buckland therefore must establish that there was error, that the error was plain, and that the error affected his substantial rights. Olano, 507 U.S. at 732. Under Apprendi, the district court erred by sentencing Buckland on the basis of a drug quantity finding that was not submitted to a jury and established beyond a reasonable doubt, and the error is plain. See Nordby, 225 F.3d at 1060. Because we conclude that §§ 841(b)(1)(A) and (B) are unconstitutional, the maximum sentence that can be imposed on Buckland for possession of an undetermined amount of methamphetamine is 20 years, under § 841(b)(1)(C). Buckland's sentence of 27 years thus affected his substantial rights. [FN13] Imposing a sentence that is seven years more than the maximum sentence constitutionally permitted under the facts as found by the jury undoubtedly "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." [FN14]   See Nordby, 225 F.3d at 1061-62.

### V.

Because we conclude that §§ 841(b)(1)(A) and (B) are unconstitutional, we must consider whether they are severable from the remainder of the statute. Bd. of Natural Res. v. Brown, 992 F.2d 937, 947 (9th Cir.1993).   The first question in the inquiry is whether the statute is "fully operative" after the unconstitutional provisions have been excised. Id. at 948. The elimination of §§ 841(b)(1)(A) and (B) " 'in no way alters the substantive reach of the statute and leaves completely unchanged its basic operation' " because a defendant can still be convicted under § 841(a) and sentenced under § 841(b)(1)(C) to a maximum of twenty years' imprisonment, regardless of the amount of a schedule I or II controlled substance he or she possessed. Id. (quoting United States v. Jackson, 390 U.S. 570, 586 (1968)). The second question is whether Congress would have enacted the constitutional provisions of the statute independently of the unconstitutional provisions. Id. Congress clearly would have enacted the remaining penalty provisions in § 841(b) in order for the sentencing court to sentence a defendant convicted of a violation of § 841(a). Having thus satisfied both inquiries, we conclude that §§ 841(b)(1)(A) and (B) are severable from the remainder of the statute.

### CONCLUSION

The maximum sentence authorized by the jury's verdict for an undetermined amount of methamphetamine was 20 years under § 841(b)(1)(C).   Buckland's sentence of 27 years, accordingly, was plain error, and it affected his substantial rights.   We thus vacate Buckland's sentence and remand for resentencing under § 841(b)(1)(C).

VACATED and REMANDED.   DUPLANTIER, District Judge, Dissenting:

I respectfully dissent.   I agree with the reasoning of the Seventh Circuit in United States v. Brough, 243 F.3d 1078 (7th Cir.2001).

> FN* The Honorable Adrian G. Duplantier, Senior United States District Judge for the Eastern District of Louisiana, sitting by designation.

> FN1.   A provision of a statute is facially unconstitutional if "no set of circumstances exists under which the [provision] would be valid." United States v. Salerno, 481 U.S. 739, 745 (1987)

> FN2. Because Buckland's case comes before us on direct review, he is entitled to the benefit of Apprendi 's new rule. Griffith v. Kentucky, 479 U.S. 314, 328 (1987);   United States v. Nordby, 225 F.3d 1053, 1059 (9th Cir.2000).

> FN3. Apprendi was convicted of three counts, only one of which is relevant here.

> FN4. In Apprendi, the Court acknowledged that Almendarez-Torres v. United States, 523 U.S. 224 (1998), may have been incorrectly decided because it permitted a court to increase a defendant's sentence for a prior conviction that was not mentioned in the indictment. 530 U.S. at 489- 90. The Court, however, decided not to revisit Almendarez-Torres, treating recidivism as a "narrow exception" to the general rule announced in Apprendi. Id. Thus, although Apprendi "casts doubt on the continuing viability of Almendarez-Torres," Almendarez-Torres remains good law "unless and until [it] is overruled by the Supreme Court." United States v. Pacheco-Zepeda, 234 F.3d 411, 414 (9th Cir.2000), amended, ___ F.3d ___, 2000 WL 33156290 (9th Cir. Feb. 8, 2001), cert. denied, 121 S.Ct. 1503 (2001).

> FN5. Methamphetamine is a schedule II drug.   21

Copr. © West 2001 No Claim to Orig. U.S. Govt. Works

C.F.R. § 1308.12(d).

FN6. Although the majority opinion noted the dissent's "lengthy disquisition on the benefits of determinate sentencing schemes, and the effect of today's decision on the federal Sentencing Guidelines," the opinion responded that the Guidelines were not before the Court, but was silent about determinate sentencing schemes. 530 U.S. at 497 n.21.

FN7. The jury instruction on the possession counts stated:
The defendant is charged in Counts 2, 4 and 6 of the superseding indictment with possession with intent to distribute methamphetamine, in violation of Section 841(a)(1) of Title 21 of the United States Code. In order for the defendant to be found guilty of that charge, the government must prove each of the following elements beyond a reasonable doubt:
First, that on or about the date alleged, the defendant knowingly possessed, or aided and abetted the possession of, a mixture or substance containing methamphetamine; and
Second, that the defendant did so with the intent to deliver it to another person.
It does not matter whether the defendant knew that the substance was methamphetamine. It is sufficient that the defendant knew that it was some kind of a prohibited drug.
The instruction on the conspiracy count merely described the requirements of finding a conspiracy and did not mention the amount of methamphetamine.

FN8. Although the structure of the statute may not be dispositive, " 'the title of a statute and the heading of a section' are 'tools available for the resolution of a doubt' about the meaning of a statute." Almendarez- Torres, 523 U.S. at 234 (quoting Bhd. of R.R. Trainmen v. Baltimore & Ohio R.R., 331 U.S. 519, 528-29 (1947)). But cf. Jones, 526 U.S. at 233 (stating that "[t]he 'look' of [18 U.S.C. § 2119] ... is not a reliable guide to congressional intentions").

FN9. Buckland argues that drug type is an "enhancement element" that should be pleaded in the indictment and proven at trial. He argues that it was not, and that he should accordingly be sentenced under the subsection of § 841 that provides the lowest statutory maximum sentence, subsection (b)(1)(D). We disagree that he should be sentenced under subsection (b)(1)(D), because it is inapplicable to his case. Subsection (b)(1)(D) deals with small quantities of marijuana or hashish,

and with controlled substances in schedules III, IV, and V. Methamphetamine is a Schedule II substance. 21 C.F.R. § 1308.12. Moreover, Buckland fails to raise the argument clearly, and so we decline to address the issue. Cf. United States v. Viramontes-Alvarado, 149 F.3d 912, 916 n.2 (1998) (declining to consider an issue "not specifically and distinctly argued" in the appellant's opening brief).

FN10. A three-judge panel cannot reconsider or overrule the decision of a prior panel, absent an intervening Supreme Court decision that has undermined the precedential value of that authority. United States v. Hanley, 190 F.3d 1017, 1023 (9th Cir.1999); United States v. Gay, 967 F.2d 322, 327 (9th Cir.1992).

FN11. Further evidence that Congress intended the penalties section to constitute sentencing factors, rather than elements of the offense, is its inclusion in the penalties section of an enhancement for a prior felony drug offense conviction, which is "as typical a sentencing factor as one might imagine." Almendarez-Torres, 523 U.S. at 230.

FN12. In United States v. Slaughter, 238 F.3d 580 (5th Cir.2001), cert. denied, 121 S.Ct. 2015 (2001), the Fifth Circuit rejected a facial constitutional challenge to § 841, stating, without discussion, that "[w]e see nothing in the Supreme Court decision in Apprendi which would permit us to conclude that 21 U.S.C. §§ 841(a) and (b), 846, and 860(a) are unconstitutional on their face." Id. at 581. See also United States v. Fort, 248 F.3d 475, 483 (5th Cir. Apr. 17, 2001) (relying on Slaughter to reject argument that §§ 841(a) and (c) are facially unconstitutional in light of Apprendi ); United States v. Candelario, 240 F.3d 1300, 1311 n.16 (11th Cir.2001) (finding, without explanation, the defendant's facial challenge to the constitutionality of §§ 841 and 846 to be without merit), cert. denied, 121 S.Ct. 2535 (2001). The Tenth Circuit has also rejected a facial challenge to § 841, reasoning that its pre-Apprendi cases holding that drug quantity is a sentencing factor are no longer of precedential value, and that § 841 does not address procedures for determining drug quantity. United States v. Cernobyl, ___ F.3d ___, No. 00-7033, 2001 WL 733406, at *3 (10th Cir. June 29, 2001). For the reasons discussed above, we cannot agree with the Tenth Circuit.

FN13. Nordby declined to decide which of two approaches should be used to determine whether an Apprendi error affected a defendant's substantial

Copr. © West 2001 No Claim to Orig. U.S. Govt. Works

**(Publication page references are not available for this document.)**

rights- weighing the extra sentence imposed upon the defendant, or examining whether a jury would have found the defendant guilty absent the error. Nordby, 225 F.3d at 1060. We need not address the issue either because we conclude that, in a case such as this one, where the defendant has been sentenced under an unconstitutional statute, weighing is inappropriate; thus, neither approach applies. Because §§ 841(b)(1)(A) and (B) are facially unconstitutional, any sentence over the twenty-year maximum in § 841(b)(1)(C) affects a defendant's substantial rights.

FN14. The government argues that the Apprendi

error did not "seriously affect[ ] the fairness, integrity or public reputation of judicial proceedings," Olano, 507 U.S. at 732 (internal quotations omitted), because the 27-year sentence Buckland received could have been achieved by imposing consecutive sentences, regardless of the quantity of drugs. This argument has been rejected by Apprendi. See 530 U.S. at 474 (rejecting the argument that the judge could have imposed consecutive sentences to achieve the same prison term that Apprendi received).

END OF DOCUMENT

Copr. © West 2001 No Claim to Orig. U.S. Govt. Works